# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**442**

**CA 13-00762**

PRESENT: SCUDDER, P.J., CENTRA, CARNI, SCONIERS, AND WHALEN, JJ.

---

LOTFI BELKHIR, PLAINTIFF-RESPONDENT,

V                                                   MEMORANDUM AND ORDER

SOUAD AMRANE-BELKHIR, DEFENDANT-APPELLANT.

---

LEONARD A. ROSNER, ROCHESTER, FOR DEFENDANT-APPELLANT.

LOTFI BELKHIR, PLAINTIFF-RESPONDENT PRO SE.

---------------------------------------------------------------------------------

Appeal from an amended judgment of the Supreme Court, Ontario County (William F. Kocher, A.J.), entered August 10, 2012 in a divorce action. The amended judgment, among other things, distributed the marital property.

It is hereby ORDERED that the amended judgment so appealed from is unanimously modified on the law by reducing the credit given to plaintiff for various payments he made by $12,112.95 and by increasing plaintiff's child support obligation in an amount to be determined upon the calculation of the appropriate FICA deductions from plaintiff's actual and imputed income, and the matter is remitted to Supreme Court, Ontario County, for that purpose.

Memorandum: Defendant wife appeals from an amended judgment of divorce entered, in part, upon a referee's amended report that decided issues of child support, maintenance and equitable distribution. We note at the outset that defendant's notice of appeal recites that she is appealing from the judgment of divorce and that the notice of appeal was filed prior to entry of the amended judgment. "We nevertheless exercise our discretion to treat the notice of appeal as valid and deem the appeal as taken from the amended [judgment]" (*Matter of Mikia H. [Monique K.]*, 78 AD3d 1575, 1575, *lv dismissed in part and denied in part* 16 NY3d 760; *see* CPLR 5520 [c]; *Adams v Daughtery*, 110 AD3d 1454, 1455).

We agree with defendant that Supreme Court erred insofar as it credited plaintiff with 100% of the payments he made for the mortgage, utilities and other household expenses for the period between the commencement of this divorce action and the date on which plaintiff moved out of the marital residence. During the pendency of a divorce action, when "a party has paid the other party's share of what proves to be marital debt, such as the mortgage, taxes, and insurance on the marital residence, reimbursement is required" (*Le v Le*, 82 AD3d 845, 846; *see Myers v Myers*, 87 AD3d 1393, 1394-1395). Because plaintiff

lived in the marital residence after this action was commenced, he "is [only] entitled to a credit in the amount of one half of his household expenditures during the period he occupied the marital residence" (*Southwick v Southwick*, 214 AD2d 987, 988). As a result, the mortgage payments and other household expenses plaintiff paid, totaling $24,225.90, should be reduced by 50% to reflect plaintiff's enjoyment of the benefits of those payments, and thus the amount credited to him should be reduced by $12,112.95. We therefore modify the amended judgment accordingly.

We reject defendant's further contention that the court erred in denying her request for maintenance. In deciding whether to award maintenance, the court "must consider the payee spouse's reasonable needs and predivorce standard of living in the context of the other enumerated statutory factors" (*Hartog v Hartog*, 85 NY2d 36, 52; *see* Domestic Relations Law § 236 [B] [6] [a]). On this record, it cannot be said that the court abused its discretion in denying defendant's request for maintenance (*see Smith v Winter*, 64 AD3d 1218, 1220, *lv denied* 13 NY3d 709).

Contrary to defendant's further contentions, the court did not abuse its discretion in either failing to impute income to plaintiff for the first six months after he was terminated by his company or in thereafter imputing income to plaintiff of only $140,000 per year. "[I]n determining a party's child support obligation, a court need not rely upon the party's own account of his or her finances, but may impute income based upon the party's past income or demonstrated earning potential" (*Filiaci v Filiaci*, 68 AD3d 1810, 1811 [internal quotation marks omitted]; *see Irene v Irene* [appeal No. 2], 41 AD3d 1179, 1180). " 'Trial courts . . . possess considerable discretion to impute income in fashioning a child support award' . . . , and a court is not required to find that a parent deliberately reduced his or her income to avoid a child support obligation before imputing income to that parent" (*Irene*, 41 AD3d at 1180; *see Sharlow v Sharlow*, 77 AD3d 1430, 1431). "[A] court's imputation of income will not be disturbed so long as there is record support for its determination" (*Lauzonis v Lauzonis*, 105 AD3d 1351, 1351). Here, the record supports the court's determination that plaintiff's termination was not his fault, and thus it was reasonable to thereby allow him six months in which to find other employment. Moreover, when considering plaintiff's education, experience and long-term earning history, it cannot be said that the court abused its discretion by refusing to impute income to plaintiff that was greater than $140,000 per year.

We agree with defendant, however, that the court erred in two respects in the manner in which plaintiff's child support obligation was calculated. Pursuant to Domestic Relations Law § 240 (1-b) (b) (5) (vii) (H), "federal insurance contributions act (FICA) taxes actually paid" shall be deducted from income prior to determining the combined parental income (*see Manno v Manno*, 196 AD2d 488, 490-491). The social security part of FICA is paid by taxpayers up to a specific income cap, and the amount of that cap generally increases year to year. Here, the court erred in its FICA calculation for 2011 because, after the court had imputed income of $140,000 to plaintiff for 2011,

it calculated plaintiff's FICA deduction as if he would have paid the social security portion of FICA on the full amount of his imputed income, which was considerably higher than the social security wage limit in 2011.  We also conclude that the court erred in deducting FICA from plaintiff's Canadian income before calculating child support given that those taxes were not paid on the income he earns in Canada.  "Since FICA taxes should be deducted only from income upon which FICA taxes are 'actually paid' prior to applying the provisions of Domestic Relations Law § 240 (1-b) (c)" (*Kaufman v Kaufman*, 102 AD3d 925, 927), the child support calculations based on plaintiff's Canadian income were erroneous.  Plaintiff argues that deducting FICA from his Canadian income is appropriate because he pays taxes in Canada that are the equivalent of FICA.  Even assuming, arguendo, that he is correct, we cannot determine on this record what those taxes are and whether or how much of those taxes would properly be deducted from his Canadian income.  We therefore further modify the amended judgment by increasing the amount of plaintiff's child support obligation based on the court's FICA errors with respect to plaintiff's 2011 imputed income and the income he earns in Canada, in a sum to be determined upon remittal of the matter to Supreme Court for recalculation in accordance with our decision herein.

We reject defendant's further contention that the award of attorney's fees of $20,000 was inadequate.  "The evaluation of what constitutes reasonable [attorney's] fees is a matter within the sound discretion of the trial court" (*Rooney v Rooney* [appeal No. 3], 92 AD3d 1294, 1296, *lv denied* 19 NY3d 810 [internal quotation marks omitted]), and there is nothing in this record that would suggest that the court abused its discretion in awarding attorney's fees.  We have reviewed defendant's remaining contentions and conclude that none require further modification of the amended judgment of divorce.

Entered:  June 20, 2014                          Frances E. Cafarell
                                                 Clerk of the Court