# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1012**

**CA 13-01537**

PRESENT: CENTRA, J.P., FAHEY, WHALEN, AND DEJOSEPH, JJ.

---

JULIE W. ANTINORA,
PLAINTIFF-RESPONDENT-APPELLANT,

V                                                          MEMORANDUM AND ORDER

TERRANCE J. ANTINORA,
DEFENDANT-APPELLANT-RESPONDENT.

---

DAVIDSON FINK, LLP, ROCHESTER (DONALD A. WHITE OF COUNSEL), FOR
DEFENDANT-APPELLANT-RESPONDENT.

MAUREEN A. PINEAU, ROCHESTER, FOR PLAINTIFF-RESPONDENT-APPELLANT.

---

Appeal and cross appeal from a judgment of the Supreme Court, Monroe County (John M. Owens, J.), entered June 5, 2013 in a divorce action. The judgment, among other things, awarded plaintiff spousal maintenance.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by vacating the award of child support, ordering plaintiff to pay defendant the sum of $2,768.30 for her wasteful dissipation of assets, vacating the decretal paragraph concerning the marital residence, and ordering that the retirement account from plaintiff's premarital employer was not marital property and that defendant's Roth IRA account was marital property, and as modified the judgment is affirmed without costs and the matter is remitted to Supreme Court, Monroe County, for further proceedings in accordance with the following Memorandum: In this divorce action, defendant husband appeals and plaintiff wife cross-appeals from an order issued by the Referee who presided over the parties' nonjury trial. We note at the outset that the parties' notices of appeal and cross appeal recite that the husband and wife are appealing and cross-appealing from the Referee's order, rather than from the judgment of divorce entered in Supreme Court. Nevertheless, in the exercise of our discretion, we treat the notices of appeal and cross appeal as valid and deem the appeal and cross appeal as taken from the judgment (*see* CPLR 5520 [c]; *Myers v Myers*, 87 AD3d 1393, 1394).

We reject the husband's contention that the amount and duration of the spousal maintenance award were an abuse of the court's discretion (*see generally Hartog v Hartog*, 85 NY2d 36, 51-52). Contrary to the wife's contention, the husband established at trial that he was entitled to credits against any award for retroactive maintenance for his voluntary payments toward "the other party's share

of what prove[d] to be marital debt" (*Le v Le*, 82 AD3d 845, 846; *see generally Myers v Myers*, 87 AD3d 1393, 1394-1395; *Heiny v Heiny*, 74 AD3d 1284, 1285).

We agree with the husband that the court failed to articulate a proper basis for applying the Child Support Standards Act (CSSA) to the combined parental income in excess of the statutory cap, which was $136,000 at the time (*see* Domestic Relations Law § 240 [1-b] [c] [2], [3]; Social Services Law § 111-i [2] [b]; *Matter of Cassano v Cassano*, 85 NY2d 649, 654-655; *Irene v Irene* [appeal No. 2], 41 AD3d 1179, 1181).  In particular, the court failed to indicate how the children's actual needs would not be met if it had calculated child support at the statutory cap (*see generally Matter of Miller v Miller*, 55 AD3d 1267, 1268-1269).  It is well settled that " 'blind application of the statutory formula to [combined parental income] over [$136,000], without any express findings or record evidence of the children's actual needs, constitutes an abdication of judicial responsibility and renders meaningless the statutory provision setting a cap on strict application of the formula' " (*Matter of Malecki v Fernandez*, 24 AD3d 1214, 1215).  In addition, although not raised by the parties, we conclude that the court erred in failing to order that child support be adjusted upon termination of maintenance, pursuant to Domestic Relations Law § 240 (1-b) (b) (5) (vii) (C) (*see Martin v Martin*, 115 AD3d 1315, 1316; *Ripka v Ripka*, 77 AD3d 1384, 1386).  We therefore further modify the judgment by vacating the award of child support, and we remit the matter to Supreme Court to determine the husband's present and prospective child support obligations in compliance with the CSSA, following a further hearing, if necessary (*see Martin*, 115 AD3d at 1316), and to order that child support be adjusted upon termination of maintenance.

We reject the contentions of the parties that the court erred in determining that they wastefully dissipated marital assets (*see* Domestic Relations Law § 236 [B] [5] [d] [12]).  We conclude, however, that the court erred in its calculations of such wasteful dissipation in determining the equitable distribution award.  In our view, the record establishes that the husband wastefully dissipated $5,862, and that the wife wastefully dissipated $11,398.59, in marital assets.  The husband is thus entitled to a credit of one half of the difference of those two amounts, i.e., $2,768.30, and we therefore further modify the judgment by ordering plaintiff to pay defendant that amount (*see Sotnik v Zavilyansky*, 101 AD3d 1102, 1104).

Contrary to the wife's contention, the court did not abuse its discretion in adjusting the distributive award in lieu of requiring the husband to contribute to her attorney's fees.  Inasmuch as the wife is the less monied spouse, thereby triggering the rebuttable presumption entitling her to attorney's fees, the court was required to articulate why it was not awarding attorney's fees to the wife (*see* Domestic Relations Law § 237 [a]; *Leonard v Leonard*, 109 AD3d 126, 129-130).  We conclude that the court sufficiently articulated its rationale when it explained that, instead of having the husband contribute to the wife's attorney's fees, it would increase the distributive award to the wife by granting her, inter alia, the

proceeds of an unsold luxury automobile and relieving her of her share of the marital credit card debt (*see Crook v Crook*, 85 AD3d 958, 959; *Redgrave v Redgrave*, 22 AD3d 913, 914; *see generally McCarthy v McCarthy*, 172 AD2d 1040, 1040).

With respect to the value of the marital residence, we agree with the parties that the court erred in simply averaging the values set forth in the appraisals of the parties' experts without articulating its reason for doing so (*see* Domestic Relations Law § 236 [B] [5] [g]; *Capasso v Capasso*, 119 AD2d 268, 272). We therefore further modify the judgment by vacating the decretal paragraph concerning the marital residence, and we remit the matter to Supreme Court for "appropriate findings of fact and conclusions of law as required by statute" with respect to the valuation of the marital residence (*Diachuk v Diachuk*, 117 AD2d 985, 986).

Contrary to the wife's contention, in light of the husband's prior voluntary maintenance payments (*see* Domestic Relations Law § 236 [B] [6] [a]), and considering the husband's share of marital debt (*see Le*, 82 AD3d at 846; *see also Myers*, 87 AD3d at 1394-1395), we conclude that the court properly determined that she is not entitled to retroactive spousal maintenance.

We reject the wife's further contention that she is entitled to a credit for the statutory add-on expenses permitted in addition to the basic child support obligation under the CSSA, which include child care and uninsured health care expenses (*see* Domestic Relations Law § 240 [1-b] [c] [4]-[5]). Although we agree with the wife that she is entitled to a pro rata share of such payments from the husband, we also agree with the husband that he is entitled to a credit against such future expenses based on his past voluntary maintenance and child support payments (*see Lester v Lester*, 237 AD2d 872, 873), and we therefore further modify that part of the judgment awarding child support. The record establishes that the husband's pro rata share of the statutory add-on expenses is $15,008.28. In light of our decision to remit for a new determination of the husband's basic child support obligation, we cannot determine the aforementioned credit due to the husband for future add-on expenses, and we direct Supreme Court upon remittal to determine that credit after calculating the husband's basic child support obligation.

We agree with the wife, however, that the court erred in concluding that her retirement account sponsored by her premarital employer was marital property and in failing to provide for the equitable distribution of the husband's Roth IRA. At trial, the wife rebutted the presumption that her retirement account is marital property (*see generally* Domestic Relations Law § 236 [B] [1] [d] [1]; *Fields v Fields*, 15 NY3d 158, 162-163, *rearg denied* 15 NY3d 819; *Bailey v Bailey*, 48 AD3d 1123, 1124). The record establishes that her premarital employer sponsored the account, and the wife's testimony that she contributed to the account only prior to marriage was uncontroverted (*see Kenney v Lureman*, 8 AD3d 1099, 1100). We further agree with the wife that the husband did not rebut the presumption, either with account statements or with his own testimony, that his

Roth IRA is marital property (*cf. id.*), and the husband's statement of net worth, alone, is insufficient to rebut the presumption that the Roth IRA is marital property (*see Allen v Allen*, 263 AD2d 691, 692). We therefore further modify that part of the judgment concerning the parties' pension/retirement assets by ordering that the retirement account sponsored by the wife's premarital employer is the wife's separate property, and we direct Supreme Court upon remittal to provide for the equitable distribution of the husband's Roth IRA.

We reject the wife's contention that the court erred in awarding the husband certain benefits under her New York State pension. In pertinent part, those benefits included postretirement cost of living adjustments, preretirement survivorship protection, postretirement joint and survivor protection, and an early retirement subsidy. It is well settled that "[v]ested rights in a noncontributory pension plan are marital property to the extent that they were acquired between the date of the marriage and the commencement of a matrimonial action, even though the rights are unmatured at the time the action is begun" (*Majauskas v Majauskas*, 61 NY2d 481, 485-486). Therefore, the court properly awarded the husband postretirement cost of living adjustments, inasmuch as they "are merely supplements and enhancements to already existing pension benefits" (*Pagliaro v Pagliaro*, 31 AD3d 728, 730; *see Lemesis v Lemesis*, 38 AD3d 1331, 1332). Additionally, the court properly required the wife to elect a preretirement and postretirement survivorship annuity option in her pension to benefit the husband, inasmuch as the wife has the option of electing a maximum payment to herself, which would deny surviving beneficiaries any payment from the pension (*see Ferriera v Ferriera*, 112 AD2d 22, 23; *Farsace v Farsace*, 97 AD2d 951, 951-952). Finally, the court properly awarded the husband a right to any early retirement subsidy elected by the wife under the pension. Although the wife has not yet had an opportunity to elect an early retirement subsidy, any enhanced retirement income received as a result of a subsidy, other than a Social Security bridge payment or separation payment, would be considered compensation and marital property subject to equitable distribution (*see Olivo v Olivo*, 82 NY2d 202, 207-209; *D'Ambra v D'Ambra* [appeal No. 2], 94 AD3d 1532, 1535).

Entered:  February 6, 2015                    Frances E. Cafarell
                                              Clerk of the Court